**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**VELICIA MICHELLE RICHARDSON,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　　　**Case No.  6:13-cv-488-Orl-31DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

On behalf of J.W.W., Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying the claim for Supplemental Security Income (SSI) under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

# I.　　BACKGROUND

## A.　　Procedural History

On January 7, 2010, an application for childhood Supplemental Security Income (SSI) was protectively filed for the minor child, J.W.W.. (the "Child") by his mother (Plaintiff), alleging that the Child was disabled since December 28, 2009 due to attention deficit hyperactivity disorder

(ADHD). R. 130, 157, 161. Plaintiff's claim was denied initially and upon reconsideration. R. 53-54. Plaintiff timely requested a hearing before Administrative Law Judge, Chester G. Senf (hereinafter referred to as "ALJ") which was held originally on July 13, 2011, when Plaintiff failed to bring the Child to the hearing, and a supplemental hearing on September 13, 2011. R. 31-52. In a decision issued September 23, 2011, the ALJ found the Child not disabled as defined under the Act. R. 7-30. Plaintiff filed a Request for Review of Hearing Decision/Order, which the Appeals Council denied on February 2, 2013. R. 1-6. Plaintiff filed this action for judicial review on March 25, 2013. Doc. 1.

### B.     Medical History and Findings Summary

The Child was born on August 22, 2004. R. 130. At the time of the ALJ's supplemental hearing, the Child was seven years old and in second grade. R. 41. The Child's medical history is set forth in detail in the ALJ's decision. By way of summary, the Child was treated for attention deficit hyperactivity disorder and oppositional defiant disorder. R. 53, 161, 178-81.

After reviewing the Child's medical records and the testimony of the Child and his mother (Plaintiff), the ALJ found that the Child was a school-age child and had never engaged in substantial gainful activity. R. 13. The Child suffered from ADHD, combined type, a "severe" medically determinable impairment, but did not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 13. The ALJ found that the evidence established the following functional limitations from the Child's impairments and reasonably related symptoms: no limitation in the domains of acquiring and using information, moving about and manipulating objects, and health and physical well-being; less than marked limitations of functioning in the domains of attending and completing tasks and interacting and relating with others; and a marked limitation only in the domain of caring for himself. R. 20-25.

Accordingly, the ALJ determined that the Child had not been under a disability at any time through the date of the decision. R. 26.

Plaintiff now asserts two errors. Plaintiff contends that the ALJ erred in finding that the Child was not markedly limited in interacting and relating with others. Plaintiff also contends that the Appeals Council erred in not remanding the case to the ALJ on the basis of new material evidence. For the reasons that follow, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## II.     STANDARD OF DISABILITY AND STANDARD OF REVIEW

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, the Child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 416.906. The rules[1] follow the three-step sequential evaluation, under which SSA will consider: (1) whether the child is working; (2) whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924. Under the regulations for children, there are six domains used to determine a child's functional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a.

---

[1] On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits based on disability such that a child seeking SSI benefits based on disability will be found disabled if he or she has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *Brawdy v. Barnhart*, No. Civ. A. SA01-CA-0835F, 2003 WL 1955839, at *3-4 (W.D. Tex. Mar. 27, 2003) (internal citations omitted). The final rules became effective on January 2, 2001. *Id.*

Whether a child meets the "listing-level severity" standard is dependent upon whether the child has "marked" limitations in two broad areas of development or functioning or an "extreme" limitation in one of those areas. 20 C.F.R. § 416.926a(d). In assessing whether the Child has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe, as well as the interactive and cumulative effects of the child's impairment or combination of impairments individually in each domain. 20 C.F.R. § 416.926a(c). A marked limitation "seriously interferes" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation is one that interferes very seriously with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982) (internal quotations omitted).

The court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981); *see also Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Strickland v. Harris*,

615 F.2d 1103, 1106 (5th Cir. 1980). While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusions. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Walker*, 826 F.2d at 999.

## III. ANALYSIS

### A. Limitation in the domain of interacting and relating with others

Plaintiff argues the ALJ erred in finding that the Child had a less than marked limitations in the domain of "interacting and relating with others" and, as a result, finding that his condition did not meet a listing level of severity. R. 22. The Commissioner argues substantial evidence supports the ALJ's finding that the Child had less than marked limitation in the functional area of interacting and relating with others.

The ALJ found the Child had no limitation in the domains of acquiring and using information, of moving about and manipulating objects, and of health and physical well-being; and less than marked limitation in attending and completing tasks and in interacting and relating with others. R. 18-26. The ALJ found no "extreme" limitation in any domain and only one "marked" limitation—in the domain of ability to care for oneself—and the ALJ concluded that the Child's ADHD and ODD did not functionally equal the severity of any listing. R. 18-26. Thus, the ALJ determined the Child had not been under a disability at any time from the date the application was filed through the date of the decision. R. 26.

Plaintiff contends that the ALJ should have found the Child had a "marked" limitation in the domain of interacting and relating with others, and with "marked" limitations in two domains, he would have met the listing level of severity, warranting a finding of disabled. A marked limitation arises "when [the child's] impairment(s) interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities. [The child's] day-to-day functioning may be seriously limited

when [the child's] impairment(s) limits only one activity or when the interactive and cumulative effects of [the child's] impairment(s) limit several activities." 20 C.F.R. § 416.926a(e)(2). A marked limitation denotes "a limitation that is 'more than moderate' but 'less than extreme.'" *Id.*

Plaintiff argues the cumulative evidence of record shows the Child suffers from a marked limitation in the domain of interacting and relating with others. Plaintiff points to the opinions of the Child's kindergarten teacher, Ms. Spence, who indicated on the Teacher Questionnaire form that the Child had a very serious problem expressing anger appropriately, a serious problem seeking attention appropriately and respecting/obeying adults in authority, and an obvious problem playing cooperatively with other children, following rules, and using language appropriate to the situation and listener. R. 169. Plaintiff points to her hearing testimony that her son always fights, hits, and he has gone to get a knife before; and that she has had to lock her door at nighttime because she does not trust him or know what he is going to do. R. 46.

At the time of the hearing on September 13, 2011, the Child had finished first grade and had just begun second grade at Mandarin Lakes School in Homestead, Florida[2], for approximately three weeks. Plaintiff testified that the Child was in the second grade taking regular classes; but that his teacher told her that he did not focus on tasks, he talked back and cursed teachers, and fought with other students. R. 42, 50. Plaintiff testified, however, that the Child had not been sent to the principal's office or suspended, although he had been removed from the classroom on one occasion. R. 42-43. The ALJ issued his opinion ten days later, on September 23, 2013, and accurately set forth Plaintiff's testimony as follows:

> At the hearing, the claimant's mother testified that he was 7 years old and was in the 2nd grade, in regular classes. She stated that the clamant has to sit by the teacher. He does not stay still enough to do his work. He cursed the teacher out when school started. They had to get a male teacher to handle him. They are trying to avoid

---

[2]The hearing was held in Orlando, Florida. R. 31.

>suspending him.  He is going to have to be on a behavior chart.  He does take medications that [are] supposed to keep him calm and on task.  The medications are not helping him.  He fights with siblings.  There are 6 kids in the house.  He was diagnosed with ADHD when he was little.  He has been on medications for 2 ½ to 3 years.  The mother reported that the claimant is impulsive.  He reacts to different things.  He is being treated at Lakeside once a month.  He is struggling academically.  The other children are doing fine.  He acts out with his teachers and uses profanity.  He never sits still.

R. 14.  To the extent Plaintiff testified the Child was on the medications "for two and a half to three years" and the medications were not helping (R. 45), as the ALJ noted, the medical records showed the Child had stopped taking the medications for more than a year between May 2010 and August 2011.  The ALJ found that the Child's impairments could reasonably be expected to produce the alleged symptoms, but that the mother's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's findings. R. 15.

The ALJ discussed at length the information on the Teacher Questionnaire from the Child's kindergarten teacher, Ms. Spence, dated March 4, 2010:

>This questionnaire indicated that the [Child] was on grade level in reading, math and written language.  The teacher indicated that the [Child] had no problems in acquiring and using information.  The [Child] was performing on a typical kindergarten level.  The claimant had no problems in attending and completing tasks.  However, the teacher indicated a very serious problem in completing homework assignments.  He had a slight problem in changing from one activity to another without being disruptive, organizing own things or school materials, completing work accurately without careless mistakes, and working without distracting self of others. The teacher reported that the [Child] completed classroom assignments independently and with little re-direction.  He failed to turn in homework every day or homework was being completed by other family members. In interacting and relating with others, the [Child] had problems. He had a very serious problem expressing anger appropriately.  He had a serious problem seeking attention appropriately and respecting/obeying adults in authority.  He had an obvious problem playing cooperatively with other children, following rules, and using language appropriate to the situation and listener. he had a slight problem in making and keeping friends.  It was necessary to implement behavior modification strategies for the [Child]. . . .The teacher indicated that the [Child] needed constant behavior re-directions. . . .  He had problems in caring for himself. He had a very serious problem handling frustration appropriately and using appropriate coping skills to meet daily demands. He had a serious problem being

>patient when necessary, taking care of personal hygiene, and identifying and appropriately asserting emotional needs. He had an obvious problem in caring for physical needs, using good judgment regarding personal safety and dangerous circumstances, responding appropriately to changes in own mood, and knowing when to ask for help. The teacher reported that the [Child] was constantly seeking the attention he did not receive at home. He used his behavior as a way to get attention. He got angry and frustrated easy and threw huge fits. No matter how much positive attention he received, he continued with inappropriate behavior. The teacher opined that the [Child's] behavior and emotional frustrations were due to inconsistencies at home, rather than due to a medical condition. From her observations, the [Child's] lack of attention, support, and care at home lead to his behaviors and problems at school.

R. 17. Within the discussion about the domain challenged by Plaintiff – interacting and relating with others–the ALJ again cited to Ms. Spence's report but relied more extensively on the state agency reviewing psychologists' opinions that the Child had less than marked limitations in this domain:

>The teacher reported that the [Child] had problems in this domain. He had a very serious problem expressing anger appropriately. He had a serious problem seeking attention appropriately and respecting/obeying adults in authority. He had an obvious problem playing cooperatively with other children, following rules, and using language appropriate to the situation and listener. He had a slight problem in making and keeping friends. It was necessary to implement behavior modification strategies for the claimant. . . The teacher indicated that the [Child] needed constant behavior re-directions.
>
>The [Child's] mother testified that he fights with his siblings. There are six kids in the house. He acts out with his teachers and uses profanity. He never sits still.
>
>Drs. Prickett and Hinkeldey [the reviewing psychologists] opined that the [Child] had less than marked limitations in this domain. The Lakeside [counselor[3]], whose name is illegible, opined that the [Child] had marked limitation in this domain. The undersigned concurs with Drs. Prickett and Hinkeldey's opinions, as they are consistent with the teacher's report, the mother's testimony, and progress notes from Lakeside.

R. 22.

In an earlier portion of the decision, the ALJ thoroughly reviewed the medical records of ADHD treatment for the Child, concluding that the Child's condition was stable on medication, but

---

[3]The form was not signed by a doctor, but by a licensed mental health counselor with the acronym "LMHC" after the counselor's name. R. 267.

-8-

that he was notably hyper at an August 2011 doctor visit when he had been off his medication for more than a year, since May 2010. The ALJ cited medical records showing the Child had undergone treatment from Lakeside Behavioral Healthcare for evaluation and treatment of ADHD starting in November 2009; in December 2009, the Child underwent a psychiatric evaluation by Dr. Bhaghani; he noted Plaintiff reporting getting calls almost everyday from the school due to the Child's out of control and behavior problems; the Child had a big family with five brothers and one sister. R. 15. Dr. Bhaghani diagnosed the Child with ADHD and ODD and prescribed counseling and medication. R. 15.

The ALJ accurately summarized Dr. Bhaghani's notes from March 2010 that the Child was doing well and was stable on medication without side effects, his intellectual functioning was within normal limits, and he was not hyper; the medications were continued. R. 15. In April 2010 when the Child saw Dr. Bhaghani for follow up, the ALJ noted, the mother reported that the Child was doing well, but still had problems sleeping at night and was hyper in the morning; *as long as he took his medicine in the morning he was fine*, otherwise, he was very defiant and not following directions. R. 16 (emphasis added). Dr. Bhaghani continued one medication for the mornings and increase the other medications for sleep. R. 16.

The ALJ noted that when the Child was seen at Lakeside Behavioral on May 13, 2010, the mother reported he was acting out at home and school; he was hyper during the interview and not following directions, his insight and judgment were poor and very impulsive; his medication for ADHD was increased and a second one was continued. R. 16. There were no treatment records from May 2010 to August 2011. At a psychiatric medication evaluation on August 2, 2011, when the Child was hyper, aggressive, and defiant during the appointment, Plaintiff admitted that the Child had been off his medications since May 1, 2010. R. 16. Dr. Bhaghani re-prescribed the same medications the Child had previously been prescribed but had stopped taking. R. 16 (emphasis added).

Just two weeks before the ALJ's hearing, on September 2, 2011, the Child had an intake screening at Lakeside Behavioral Healthcare. R. 16. These records were provided to the ALJ (R. 276-80), and in fact, the ALJ cited the September 2, 2011 records from Lakeside which recorded that the Child was then seven years old, and presented with a history of treatment for ADHD; he had recently been acting out at school, avoided tasks involving mental effort, exhibited impulsive and aggressive behaviors, was disruptive in the classroom; got out of his seat without permission, struggled with academic performance, ran into the street, did not follow directions, and seemed to be on the go. R. 16. He was diagnosed with ADHD, combined type; counseling and psychiatric services were recommended to prevent a higher level of care from being needed; his prescription was changed to a different medication (Clonidine 0.1 mg). R. 16.

The ALJ accurately summarized, and made findings, based on the 2010-2011 Lakeside Behavior medical records:

> In terms of the [Child's] diagnosis of [ADHD] and [ODD]. . .  He was started on Adderall XR.  Follow up visits in March 2010 indicated he was doing well and was stable on medication. He was making progress in school and at home. Dr. Bhaghani indicated the [Child] was medically stable. . . . It is noted that the symptoms observed and reported by Dr. Bhaghani in March 2010 are inconsistent with and contrary to the diagnosis of [ADHD]. In April 2010, it was found that the medications significantly improved behavior and Dr. Bhaghani found that the claimant was medically stable. In May 2010, the mother related that the [Child] was acting out at home and school. He was hyper during the interview and not following directions.  Dr. Bhaghani again indicated that the [Child] was stable on medication. . . . The record also reveals that from May 2010 through August 2011, the [Child] was off medications. In September 2011, counseling and psychiatric services [were] recommended and Clonidine was prescribed. *The record shows that the [Child's] symptoms returned because he did not tak[e] his prescribed medication for one year.*
> 
> The record demonstrates that from the time the [Child] started psychiatric treatment and prescribed medications for ADHD and ODD, he made progress with his behavior issues and was less hyper.
> 
> The record also shows that the teacher reported the [Child] was making progress and was reading on grade level.  In addition, the teacher's observations and conclusions were not [the] result of [a] medical condition, but are due to incompetent parenting at home.

-10-

> As for the opinion evidence, two State Agency psychologists opined that in acquiring and using information, the [Child] had no limitations; attending and completing tasks, less than marked limitations; interacting and relating with others, less than marked limitation; and in health and physical well-being, no limitation (Exhibits 2F and 3F). Great weight is accorded to these opinions because they are consistent with progress notes from Lakeside, teacher's report, and the mother's testimony.
>
> Lakeside Behavioral Healthcare completed a Childhood Disability Evaluation Form on May 21, 2010. However, a doctor did not sign the form and the name was illegible. This form indicated that the [Child] had marked limitations in acquiring and using information; marked limitation in attending and completing tasks; marked limitation in interacting and relating with others; and no limitation in moving about and manipulating objects, caring for himself, and health and physical well-being. This opinion was considered and given some weight, as it is not consistent with the State Agency's opinions, the teacher's report, and the mother's testimony. It is also not consistent with progress notes from Lakeside Behavioral Healthcare.
>
> Great weight is given to the teacher's report as she has interacted with the [Child] for 7 months and it is consistent with the [Child's] mother's testimony and the State Agency psychologists' opinions. . . After carefully considering all of the evidence in the record, including the testimony received at the hearing, the undersigned [ALJ] finds that the evidence does not support the conclusion that the [Child's] ADHD and ODD meet or equal any of the impairments listed in Appendix I to subpart P of Regulations No. 4.

R. 17-18 (emphasis added). As the ALJ noted, the Childhood Disability Evaluation Form from Lakeside Behavior was not completed by a doctor. It was also completed on May 21, 2010 – during the time that the Child was no longer on medications. The ALJ gave great weight to the kindergarten teacher's opinion that the Child's condition was not the result of a medical condition but due to incompetent parenting at home. R. 18. He also gave great weight to the opinions of the reviewing psychologists who indicated that the Child's symptoms improved when he took his medication. R. 230 (Dr. Prickett[4]); R. 236 (Dr. Hinkeldey[5]). One of the reviewing psychologists, Dr. Hinkeldey

---

[4] "[The Child] has some limitations but has responded to medication and should improve with ongoing treatment. He does not meet or equal a listing."

[5] "Reports noted to be inconsistent: Medical evidence of ADHD with [diagnosis], teacher not noting hyperactivity. ODD appears to be more significant issue, with teacher noting marked difficulty in Domain V [caring for oneself]. Other domains show less than marked impairment. Limitations do not meet or equal a listing."

noted that although the teacher, Ms. Spence, rated the Child with a serious/very serious problem in three activity categories, she also rated him as having no problem or a slight problem in more than half of the rest of the categories used to assess functioning in this area. R. 169, 236. The ALJ's finding that the Child's had a less than marked impairment in interacting and relating with others was based on substantial evidence from the Child's teacher, the mother's testimony, the medical records, and the reviewing psychologists' opinions.

### B. New and material evidence

Plaintiff argues that the Appeals Council erred in failing to remand the case after Plaintiff submitted additional information from the Child's second-grade teachers dated December 16, 2011, well after the ALJ's decision in September 23, 2011. The Commissioner argues that the AC properly declined to consider the additional evidence because the teachers' opinions were based on four months of experience with the Child and did not necessarily relate to the three-week period on or before the date of the ALJ's decision and it was simply not possible to parse out the teachers' evaluation of the first three weeks of second grade from the entire four month period.

A claimant may present new evidence during any stage of a Social Security proceeding. *See* 20 C.F.R. § 404.900(b). To be entitled to remand to the Commissioner, the claimant must show that (1) new, non-cumulative evidence exists; (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result; and (3) good cause exists for the claimant's failure to submit the evidence at the appropriate administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1261 (11th Cir. 2007) (quoting 20 C.F.R. § 404.970(b)). The Appeals Council may deny review if the new evidence does not show the ALJ's

decision to be erroneous. *See id.* at 1262. When a plaintiff submits additional evidence to the Appeals Council and argues that the Appeals Council erred in denying review, the court must determine whether the Commissioner's decision is supported by substantial evidence on the record as whole. *See Ingram*, 496 F.3d at 1262, 1266; *Hummel v. Astrue*, No. 8:06-CV-725-T-EAJ, 2007 WL 2492460, *7 (M.D. Fla. Aug. 30, 2007) (under *Ingram*, the court reviews whether the decision to deny benefits is supported by substantial evidence in the record as a whole, including evidence submitted to the Appeals Council).

Plaintiff argues that the second-grade teacher Questionnaires are "new" and "material" evidence with a "reasonable possibility" of changing the outcome of the ALJ's decision and the AC should have granted review. She argues that the AC erred by ignoring the fact the Child had been in class with these second grade teachers since August 22, 2011, *i.e.*, for three weeks before the September 13, 2011 hearing and for a month before the September 23, 2011 decision.

The ALJ based his finding that the Child had a marked limitation in only one domain, the ability to care for himself, based in part on the opinion of the Child's kindergarten teacher, Ms. Spence, who opined that the Child's behavior was not due to a medical condition, but due to lack of attention, support, and care at home. R. 173. The ALJ gave great weight to Ms. Spence's report because she had interacted with the Child for seven months, and it was consistent with Plaintiff's testimony and the State agency psychologists' opinions. R. 18. The Appeals Council reviewed the Teacher Questionnaires and found they did not relate to the ALJ's decision about the Child's disability prior to September 23, 2011:

> We also looked at [the] Interim Progress Report from Miami Dade County Public Schools dated February 22, 2012 and Notice of Suspension dated February 6, 2012 and February 23, 2012 (3 pages); *Teacher Questionnaire signed by Ms. Gonzalez dated December 16, 2011 (9 pages); and Teacher Questionnaire signed by James Leffert dated December 16, 2011 (9 pages).* The Administrative Law Judge decided your case through September 23, 2011. This new information is about a later time.

> Therefore, it does not affect the decision about whether you were disabled beginning on or before September 23, 2011.
>
> If you want us to consider whether you were disabled after September 23, 2011, you need to apply again. We are returning the evidence to you to use in your new claim.
>
> If you file new claim for supplemental security income within 60 days after you receive this letter, we can use October 6, 2011, the date of your request for review, as the date of your new claim. The date you file a claim can make a difference in the amount of benefits we can pay.

R. 2 (emphasis added).

As an initial matter, the evidence submitted, the alleged "Teacher Questionnaires," were not in the official Record of the Social Security Administration but were submitted to this Court (without any supporting affidavit) merely by attaching them to Plaintiff's brief. Docs. 15-1, 15-2. There is *no* evidence to show the Questionnaires were prepared by the Child's teachers, or whether they were actually prepared by anyone at the Child's school, Mandarin Lakes in Homestead, Florida. The Court notes that the grammar in the Questionnaires is conspicuously far below what is acceptable for college graduates. Moreover, the responses in the Questionnaire are virtually identical, as if the same person prepared the responses, and listed the Child's exact medications and doses, which is highly unusual for a child's teacher to know. In addition, the Teacher Questionnaires as submitted to this Court are not accompanied by any supporting academic records from the Child's school, such as progress or report cards, testing results, or an Individual Education Plan. Assuming *arguendo*, however, that there were not any issues with the authenticity of the Teacher Questionnaires and crediting the opinions that the Child has marked limitations in several areas, the Court will address the merits of Plaintiff's arguments as to the timeliness and whether the AC should have given them weight as new evidence material to the decision.

Plaintiff argues that the Appeals Council erred by failing to consider the Child's second-grade teachers' December 2011 opinions because the teachers had been teaching him since August 22, 2011,

-14-

which was approximately a month prior to the ALJ's September 23, 2011 decision. This evidence is new in that it is non-cumulative; however, it is not "material" because there is not a reasonable possibility that the new evidence would change the administrative outcome. The ALJ's reasons for finding the Child was not disabled included the fact that the Child's conditions responded to prescription medications, as long as he was consistent in taking them – and not off them for more than a year. The ALJ already had before him the Lakeside Behavior Healthcare records and Plaintiff's testimony about the Child's behavior from the same time period, September 2011, and specifically commented on them in his decision, finding that the Child responded to prescription medications and was considered medically stable by Dr. Bhaghani. There is not a reasonable possibility that the second-grade teacher Questionnaires would have changed the administrative outcome or trumped the medical records.

Plaintiff (who was represented by counsel[6]) did not ask to leave the record open for additional school records or input from the Child's second-grade teachers. The ALJ might not have held the record open for submission of second-grade questionnaires which would be of limited value since the school year had only begun about three weeks before the hearing. Plaintiff also did not provide information from Plaintiff's first-grade year of school or from his first-grade teacher, which would have been the grade he was in for the year he was not taking his medication at all (May 2010 to September 2011). A month after the hearing, on October 6, 2011, Plaintiff filed her request for review to the Appeals Council. At some point after February of 2012[7], Plaintiff apparently submitted the second-grade teacher Questionnaires and other materials (*see* list quoted above), which are not in the Record now before the Court. On February 2, 2013, the Appeals Council denied Plaintiff's request for review, but notified Plaintiff that she had the opportunity to file a claim utilizing October 6, 2011

---

[6]Plaintiff was represented by counsel other than Mr. Culbertson at the administrative level.

[7]The other documents submitted were dated February 22 and 23, 2012. *See* R. 2.

-15-

– two months before the date on the Teacher Questionnaires and during the Child's second-grade year – as the basis of a new application. R. 2. Plaintiff opted to appeal the denial instead. The AC's decision denying review and remand of the case on the basis of the teachers' Questionnaires was based on substantial evidence.

# CONCLUSION

It is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) and the Clerk of the Court be directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 5, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy